## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

| | |
|---|---|
| **TB HOLDINGS, LLC,** | : |
| *Plaintiff*, | : |
| | : |
| **v.** | :   **Case No. _____** |
| | : |
| **TOWN OF SAUGUS;** | : |
| **SCOTT CRABTREE,** *in his Official Capacity* | : |
| *as Town Manager and Individually*; | : |
| **and JOHN DOES 1-10,** *as Unnamed Town* | : |
| *Officials*, | : |
| *Defendants*. | : |

_____ :

## PLAINTIFF'S VERIFIED COMPLAINT

### *Introduction*

This case is about a local real estate developer, TB Holdings, LLC, who has been subjected to arbitrary and discriminatory treatment by the Town of Saugus. Much of this treatment has been driven by the Town Manager for the Town of Saugus, Scott Crabtree, who exercises unfettered discretion and unchecked power over the Town. Crabtree and the Town's actions include a $200,000.00 payment required by Crabtree that bore no relation, nexus, or proportionality to the subject development plans. As explained below, Crabtree and the Town are jointly liable for egregious constitutional violations, and this Court should award TB Holdings damages and just relief.

### *Parties*

1.     TB Holdings, LLC ("TB Holdings") is a Massachusetts limited liability company with a principal office at 1208 VFW Parkway, Suite 200, West Roxbury, MA 02132.

2.     The Town of Saugus (the "Town") is a municipality located in the Commonwealth of Massachusetts.

3.      Scott Crabtree ("Crabtree") is the Town Manager for the Town of Saugus and is sued both in his official capacity and individually.

4.      John Does 1-10 are other unknown municipal officials or agents who participated in the unlawful conduct alleged herein (collectively, with the Town and Crabtree, the "Defendants").

### *Jurisdiction*

5.      This Court has original jurisdiction over this civil action pursuant to 28 U.S.C. § 1331, 42 U.S.C. § 1983, and 28 U.S.C. §§ 2201 *et seq.* (the "Declaratory Judgment Act").

6.      This Court has general or specific personal jurisdiction over the Defendants who are either domiciled in the Commonwealth of Massachusetts or are employed by the Town.

7.      This Court has supplemental jurisdiction over Count VII under 28 U.S.C. § 1367.

8.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because the Defendants are residents of the Commonwealth of Massachusetts, a substantial part of the events giving rise to the claims in this Complaint occurred in this judicial district, the property subject to this action is located in this judicial district, and/or the Defendants are generally subject to personal jurisdiction in the Commonwealth of Massachusetts.

### *Facts*

#### *The Property and Development History*

9.      TB Holdings is the developer of certain parcels of land, buildings, and improvements located on Broadway and Collins Avenue in Saugus, Massachusetts known as "Essex Landing."

10.      A large portion of Essex Landing falls within the Essex Landing Condominium (the "Condominium"). *See* Amended and Restated Master Deed of Essex Landing Condominium ("Master Deed"), recorded on July 15, 2020 in the Registry of Deeds, Essex South (the "Registry") in Book 38716, Page 140.

11.     A smaller portion of Essex Landing consists of land, buildings, and other improvements thereon and is referred to as "Lot 1." *See* Deed, recorded October 19, 2016, in the Registry in Book 35365, Page 591.

12.     The Condominium Site Plan and Unit Plan shows both the units of the Condominium and Lot 1. *See* Condominium Site Plan and Unit Plan, recorded in the Registry on July 15, 2020, in Plan Book 477, Plan 78.

13.     The Essex Landing Condominium is a condominium created under, governed by, and subject to Massachusetts General Laws Chapter 183A.

14.     Essex Landing Condominium consists of six units with addresses under the Master Deed of 22, 26, 30, 40, 44, and 15 Collins Avenue, and Lot 1 has an address of 1565-1575 Broadway, Saugus, Massachusetts (collectively, the Condominium and Lot 1 are the "Property").

15.     Beginning on or around October 15, 2015, TB Holdings, as a developer of the Property received the following, among other approvals and permits:

   a.  a Master Plan Approval Action Only from the Planning Board (received by the Saugus Town Clerk on November 23, 2015);

   b.  a Special Permit from the Board of Selectmen, allowing height in excess of 50 feet for the development's six-story buildings (received by the Saugus Town Clerk on January 11, 2016); and

   c.  Site Plan Approval from the Planning Board (received by the Saugus Town Clerk on August 29, 2016).

16.     Each of these foregoing approvals and permits were filed with the Registry on October 12, 2016, in Book 35344, Page 21, 24, and 25, respectively.

17.    As of the date of this Complaint, Lot 1 has been developed as a mixed-use residential and retail project and is tenanted and in operation.

18.    Condominium Units 1, 2, and 3 (each owned by TB Holdings' affiliated entities) have been developed as residential apartment buildings and are tenanted and in operation.

19.    In the course of obtaining building and other construction related permits from the Town, TB Holdings has paid approximately $1.6 million dollars in development impact fees in connection with municipal improvements required by the Planning Board, including but not limited to constructing an approximate 1,200-foot extension of the water line to the Property.

20.    Condominium Units 4, 5, and 6 (with addresses of 30 Collins Avenue, 26 Collins Avenue, and 15 Collins Avenue, respectively), remain undeveloped (the "Undeveloped Units").

21.    Beginning in 2021 and into 2022, TB Holdings planned the development of such Undeveloped Units, which included a proposed sale of Unit 5 (and later Unit 4) to Wingate Living ("Wingate") to be used as an assisted living facility, while retaining Unit 6 for the construction of an apartment building on that Unit.

22.    Part of this planning involved TB Holdings negotiating a purchase and sales agreement with Wingate in January of 2022.

23.    During the course of negotiations with Wingate, beginning in or around February of 2022, TB Holdings sought a meeting with town officials, including Town Manager Crabtree, to discuss the proposed assisted living facility (including the independent living units).

24.    To that end, through its local zoning counsel ("Counsel") and directly by one of TB Holdings' principals, Michael Barsamian ("Barsamian"), TB Holdings made several requests to meet with Crabtree on their development plans for the Undeveloped Units and with Wingate.

25.     Despite these repeated requests and attempts to advance their development plans, TB Holdings did not receive a response from Crabtree.

### *The $200,000 Payment*

26.     Finally, Crabtree responded and stated that TB Holdings was supposed to provide a "**grant**" to the Town. Through verbal communications, which took place over the course of a few weeks, Crabtree told Counsel that he would not speak to him about TB Holdings' project until he received a $200,000.00 payment to the Town as a "**grant**" to the Town of Saugus Parks and Recreation.

27.     Despite the fact that TB Holdings was under absolutely no obligation, either by rule, regulation, or condition to any approval, to make a $200,000.00 grant to the Town, TB Holdings realized it had no choice but to proceed along this course of action provided by Crabtree, as it had invested, at that time, approximately $18 million in the project.

28.     After consulting with TB Holdings, Counsel contacted Crabtree and inquired about whether a $100,000.00 grant would be sufficient, especially considering the fact that TB Holdings had already expended approximately $1.6 million in offsite improvements to the Town's utilities, such as water and sewer.

29.     Crabtree responded to the inquiry about a $100,000.00 grant with disapproval, indicating that the grant had to be $200,000.00, and that it could not be made in multiple payments.

30.     Crabtree informed Counsel that he would meet with him and Barsamian at a formal meeting at the Saugus Town Hall to discuss TB Holdings' development plans for the Undeveloped Units and the $200,000.00 grant.

31.    Crabtree indicated to Counsel he could bring Barsamian, but not to invite Michael Touchette ("Touchette"), who is the other principal of TB Holdings. Crabtree has personal animosity towards Touchette.

32.    Before the meeting, Crabtree directed Counsel to prepare the check for the $200,000.000 grant with a form "grant" letter similar to one that he had utilized in 2018 with a company named "Saugus Avalon, LLC," in connection with another development project at 855 Broadway in Saugus. Saugus Avalon did not perform any public improvements, such as the ones TB Holdings had performed.

33.    A true and accurate copy of the form "grant" letter from March 14, 2018, which is marked "pd in full, FY 2020, 200,000" is attached hereto as **Exhibit A** (2018 Letter).

34.    TB Holdings has obtained account details from the Town showing that this $200,000.00 payment from another developer was a lump sum payment with an effective date of October 10, 2019, with this payment marked as "CONTRIBUTIONS/DONATIONS MISC" on the Town of Saugus's records. A true and accurate copy of these account details are attached hereto as **Exhibit B** (2019 Payment Details).

35.    The meeting with Crabtree occurred on May 27, 2022, in a conference room at the Saugus Town Hall (the "Meeting").

36.    Present at the Meeting were Crabtree, counsel, and Barsamian.

37.    Touchette did not attend the Meeting as a result of Crabtree's instructions.

38.    Per Crabtree's prior statements, Barsamian brought a check with him for $200,000.00 made out to the Town of Saugus, despite the fact that TB Holdings was under no obligation to make the grant pursuant to any ordinance, regulation, or any condition required by the Planning Board

or Board of Selectman. A true and accurate copy of Check 2174, as produced by the Town from what appears to be Eastern Bank records, is attached hereto as **Exhibit C** (the "Check 2174").

39.     Additionally, Barsamian brought the requested executed "grant" letter to the Meeting. A true and accurate copy of this letter is attached hereto as **Exhibit D** (the "Grant Letter").

40.     During the Meeting, Crabtree pressed about TB Holdings' plans for developing the Undeveloped Units and completing the development of the Property.

41.     Barsamian explained that the plans involved constructing a residential apartment building with approximately 45 units at 15 Collins ("Unit 6"), and to also construct an assisted living facility with independent living units in collaboration with the prospective buyer, Wingate, at 26 Collins ("Unit 5") and 30 Collins ("Unit 4").

42.     Crabtree stated towards the end of the Meeting that Michael Touchette was going to get "a slap on the wrist, but the obstacles to the development would be removed."

43.     Since TB Holdings had approximately $18 million invested in the project at that time— and with no other option but to make the $200,000.00 grant that Crabtree indicated was required for him to even discuss the projects, Barsamian handed Check 2174 for $200,000.00 to Crabtree along with the requested Grant Letter.

44.     After Barsamian handed Crabtree Check 2174 for $200,000.00 and the Grant Letter, Crabtree became visibly elated, repeatedly pounding on his own chest "like King Kong."

45.     The Meeting then concluded, after which TB Holdings proceeded to make significant investments and efforts in an attempt to gain Town approval for developing the Undeveloped Units, and to overcome the "obstacles to the development" that Crabtree indicated "would be removed."

46.     Records obtained from the Town show that Check 2174 was finally marked as deposited by the Town on August 22, 2022. *See* **Ex. D** (Grant Letter) (showing handwritten note, which was not made by TB Holdings or Barsamian, that the $200,000.00 payment was "deposited 8.22.22").

47.     These records produced by the Town further indicate that Check 2174 for $200,000.00 was eventually cleared and deemed paid by TB Holdings on September 1, 2022 (which event is hereinafter referred to as the "$200,000 Payment"). *See* **Exhibit E** (Saugus Receipts), representing a true and accurate copy of the Saugus Receipts obtained from the Town.

48.     The Saugus Receipts show that the $200,000 Payment was attributed to Check 2174, and that it was described as "Town Manager Develop" on the Saugus Receipts.

49.     Further, the Saugus Receipts indicate that the $200,000 Payment had not been reversed or voided as of December 19, 2023.

50.     A deposit ticket produced by the Town describes the $200,000 Payment as a "donation," and the deposit ticket dated August 22, 2022 states, "TB Holdings Grant." A true and accurate copy of the Deposit Ticket is attached hereto as **Exhibit F** (Deposit Ticket).

51.     Check 2174 is endorsed, "For Deposit Only to Eastern Bank, Town of Saugus, Wendy A. Hatch, Treasurer." **Ex. C** (Check 2174).

52.     TB Holdings is unaware of where the $200,000 Payment ultimately was allocated or distributed by Crabtree or the Town following its apparent deposit at Eastern Bank.

53.     Upon information and belief, the $200,000 Payment was never requested or approved by the Board of Selectman.

54.    The $200,000 Payment was not supported by any statutory fee schedule, legitimate development agreement, or mitigation condition for the Undeveloped Property imposed by the Planning Board.

55.    Rather, the Property and TB Holdings had already been subject to a development impact fee of $1.6 million for municipal improvements, as decided by the Planning Board in 2016, and which TB Holdings completed said improvements to the satisfaction of the Town.

56.    The $200,000 Payment was an additional, unrelated, off-the-record requirement and monetary exaction required by Crabtree to allow TB Holdings access to Town officials and the Planning Board, which effectively serves at Crabtree's control, influence, and appointment.

### *Continued Obstruction*

57.    Despite receiving the $200,000 Payment on September 1, 2022, the Town, Crabtree, and the other Defendants continued to obstruct TB Holdings' development of the Undeveloped Units.

58.    In September of 2022, despite  meeting with Crabtree and the tender of the required $200,000 Payment, the Town—at Crabtree's instigation—issued a cease and desist for its project and required TB Holdings to undergo a complete peer review on the project site where millions of dollars of site work had already been completed and approved by the Town.

59.    After the peer review was completed (which further delayed the project and cost TB Holdings thousands of dollars), the Planning Board then required TB Holdings to perform additional work on the site, which was not required or set forth in the plans.

60.    The Defendants have improperly delayed and denied subsequent municipal approvals sought by TB Holdings for the development of the Undeveloped Units since the $200,000 Payment on multiple occasions.

61.    For example, the Town's "Special Municipal Counsel," Jesse Schomer, hired by Crabtree, took the position that the Wingate project could not include independent living units. As a result, in November of 2022, TB Holdings was required to file a declaratory judgment action in Massachusetts Land Court to determine its rights. That litigation lasted 18 months, further delayed the project, and jeopardized TB Holdings' agreement with Wingate.

62.    Additionally, the Town's Special Municipal Counsel blindsided TB Holdings immediately prior to a Planning Board meeting in January of 2025.

63.    This Planning Board meeting was for a simple subdivision of the land, which was based upon an application submitted by TB Holdings to freeze the zoning on the site in accordance with Massachusetts law. This subdivision application was necessitated by the Town's amendments to its zoning code on two occasions, reducing the height of the buildings allowed on TB Holdings' projects, as well as the density allowed for the projects.

64.    Prior to the Planning Board meeting to be held on January 22, 2025, TB Holdings representatives had attempted to contact Schomer to determine if he in fact had any comments on the plan. Schomer did not return those calls or emails. In the past, the Planning Board had continued multiple public hearings based on the fact that Schomer, the Special Municipal Counsel, did not attend those meetings.

65.    Hours before the January 22, 2025 meeting on the subdivision, TB Holdings was informed that the Special Municipal Counsel again would not be attending the meeting, and neither would several members of the Planning Board.

66.    Finally, at 3:43 PM on the day of the January 22, 2025 meeting, the Special Municipal Counsel emailed a list of concerns to TB Holdings and the Planning Board, which were not based

upon nor supported by or required by any zoning or planning regulation of the Town or the Commonwealth.

67.     At the meeting, with only three of the five members of the Planning Board present, TB Holdings requested more time to respond to these comments for purposes of making changes or to address the concerns of Schomer. TB Holdings had appeared at the meeting with a signed extension request, but the Planning Board refused to consider the continuance and voted to deny the subdivision plan application summarily.

68.     Upon information and belief, Crabtree instructed the Special Municipal Counsel and member(s) of the Planning Board specifically not to attend the meeting on January 22, 2025. One member of the Planning Board, who had specifically told Touchette that she wanted to attend the meeting, did not attend the meeting on January 22, 2025, without any explanation provided for her absence.

69.     Thereafter, TB Holdings filed an application to the Saugus Zoning Board for new variances from the two zoning amendments made by the Town since its master plan application had been approved. Specifically, TB sought variances to the new height requirements and the new density requirements.

70.     The minutes of the meeting on April 24, 2025 indicated clearly that the variances were approved by the Zoning Board. However, in the decision, Schomer placed a condition that TB Holdings had to seek a special permit from the Board of Selectman for the same relief. This condition was never discussed with the Zoning Board at its hearing.

71.     The Special Municipal Counsel did not, despite repeated requests by the TB Holdings, submit a decision from the Zoning Board to the Zoning Board Clerk, who then was to provide it to the Town Clerk to become an official decision of the Board. As a result of this intentional

delay by the Special Municipal Counsel, TB Holdings was forced to file an appeal to the decision to comply with the time period allowed for such an appeal. At the time TB Holdings filed its appeal, only an unsigned decision had been obtained by TB Holdings. Finally, Special Municipal Counsel submitted a signed decision after TB Holdings' appeal had been filed. Thereafter, Special Municipal Counsel attempted to have the appeal dismissed as it was not accompanied by the signed and recorded decision.

72.     The Special Municipal Counsel also inserted language in the decision to the effect that only the Board of Selectman could approve building height and density, a position not supported by applicable law. The decision written by the Special Municipal Counsel required TB Holdings to go to the Board of Selectman for a special permit to obtain the height and density relief the Zoning Board had voted to grant. It also falsely indicated that TB Holdings agreed with that statement.

73.     TB Holdings is currently prosecuting appeals of the decisions by the Planning Board and Zoning Board in 25 MISC 000072 and 25 MISC 000345 in the Massachusetts Land Court, challenging the legal and factual basis for those decisions under Massachusetts law.

74.     Nonetheless, and notwithstanding those appeals and any relief that may be provided to TB Holdings through such, TB Holdings has sustained separate and distinct damages as a result of Defendants' unlawful conduct and violation of its constitutional rights under the United States Constitution and federal law.

75.     These damages include, but are not limited to, those harms suffered by TB Holdings as a result of the unlawful $200,000 Payment and the subsequent delays and obstructions by the Defendants to TB Holdings' development of the Undeveloped Units, including costs incurred to realize said development and benefits flowing therefrom.

76.     As the Defendants are aware, TB Holdings remains under contract with Wingate Living for the development and acquisition of Units 4 and 5.

77.     TB Holdings has been unable to complete the sale of land Units 4 and 5 to Wingate Living, resulting in Wingate being unable to provide assisted and independent living units to handicapped individuals.

78.     Other individuals who are not handicapped have been able to obtain housing in the direct vicinity of Units 4 and 5.

### *Recent Violation of Massachusetts Public Records Law*

79.     Before filing the instant Complaint, TB Holdings, through counsel, attempted to obtain additional information from the Town in support of its claims through a public records request (the "Public Records Request") issued pursuant to M.G.L. c. 66, § 10 (the "Massachusetts Public Records Law").

80.     The Public Records Request was delivered via email to the Public Records Officer designated by the Town on the Town's website on June 30, 2025, in statutory compliance with Massachusetts Public Records Law. *See* **Exhibit G** (Public Records Email); **Exhibit H** (Public Records Request).

81.     Neither TB Holdings or counsel for TB Holdings received any response or even a request for an extension from the Town by the statutory deadline.

82.     The first response from the Town on the Public Records Request did not occur until July 30, 2025, in which the Town attempted to invoke an extension that it is not entitled to under Massachusetts Public Records Law.

83.    Without disputing that the Public Records Request was delivered to the email of the designated Public Records Officer on June 30, 2025, the Town merely claimed that the Public Records Officer "did not open [the] email until 7/21."

84.    The Town also noted that TB Holdings did not use its "FOIA system" for the Public Records Request, seemingly as an excuse.

85.    The Town did not raise any objections to the scope of the Public Records Request, although it noted certain requested items may involve privilege (which would, in turn, require the Town to timely provide a privilege log under the Massachusetts Public Records Law).

86.    The Massachusetts Public Records Law renders the delivery date to the email address of the Public Records Officer the effective date of the Public Records Request, and regulations implementing the Massachusetts Public Records Law make clear that the Town is unable to require TB Holdings to utilize its preferred method of submission. The allegation that the Public Records Officer "did not open [the] email until 7/21" is legally irrelevant.

87.    The Town's response to the Public Records Request is untimely, insufficient, and in violation of the Massachusetts Public Records Law.

88.    Despite affording the Town a "grace period" until August 7, 2025 for the Town to provide TB Holdings with responsive records, TB Holdings has still not received any of the requested documentation or a substantive or legitimate response to its legally compliant Public Records Request.

89.    Thus, the Defendants continue to obstruct TB Holdings' exercise of its legal rights and its ability to fully pursue the claims alleged herein through its violations of the Massachusetts Public Records Law.

90.     Finally, the foregoing conduct by the Defendants is consistent and exemplary of unconstitutional municipal customs or practices, such as the coercion and extortion of developers and the use of unlawful procedures, which is employed by decision-making officials in the Town who have knowledge of the customs and practices and do nothing to end the practice, these customs or practices are attributable to the Town of Saugus, and these customs and practices are the cause of and the moving force behind the Defendants' deprivation of TB Holdings' constitutional rights.

<u>**Count I**</u>

*42 U.S.C. § 1983 – Takings Clause –*
*5th and 14th Amendments of the United States Constitution*

91.     TB Holdings repeats the foregoing allegations in this Complaint as if they were each expressly set forth herein.

92.     TB Holdings is the owner of the Property, which includes the Undeveloped Units.

93.     The $200,000 Payment extracted by the Defendants from TB Holdings for the Undeveloped Units, which was paid in full by TB Holdings on September 1, 2022, constitutes an unlawful monetary exaction in violation of the Takings Clause of the United States Constitution.

94.     The $200,000 Payment contains no essential nexus to mitigating impacts from the development of the Undeveloped Units, nor is it roughly proportional to any municipal costs created by the development of the Undeveloped Units.

95.     The $200,000 Payment served government ends which were disconnected from any development impacts created by the Undeveloped Units, and which illegitimate ends were determined by Crabtree.

96.         Crabtree exercised his executive authority as Town Manager on behalf of the Town of Saugus (whether lawfully or unlawfully, and upon information and belief, through municipal policy or custom), to extract the $200,000 Payment from TB Holdings, as well as his influence and control over the Planning Board and other municipal bodies to leverage TB Holdings to make the $200,000 Payment.

97.    TB Holdings' claim pursuant to the Takings Clause is actionable under 42 U.S.C. § 1983.

98.    Through the unlawful monetary exaction of the $200,000 Payment, Defendants have deprived TB Holdings of their constitutional rights under color of law, and as a result, are liable for damages sustained by TB Holdings.

99.    The Defendants conspired to violate the constitutional rights of TB Holdings and are jointly and severally liable under 42 U.S.C. § 1985.

100.    Defendants' actions and/or inactions are representative of municipal customs and practices utilized by the Town resulting in the violation of constitutional rights.

101.    The Defendants are also liable for TB Holdings' attorney's fees costs incurred to vindicate its constitutional rights under 42 U.S.C. § 1988.

102.    The Defendants continue to obstruct TB Holdings' exercise of its legal rights and its ability to fully pursue the claims alleged herein through its violations of the Massachusetts Public Records Law.

**WHEREFORE**, TB Holdings respectfully requests that the Court issue judgment in its favor on Count I against the Defendants, and enter an order as follows:

a.   That the Defendants are jointly and severally liable (under § 1985) to TB Holdings for conspiring and violating its rights under § 1983 and the Fifth and Fourteenth Amendment of the United States Constitution;

b.  That Crabtree and the Special Municipal Counsel's actions are imputed to the Town of Saugus;

c.  An award to TB Holdings of damages in an amount to make TB Holdings whole for Defendants' constitutional violations;

d.  An award of equitable or injunctive relief declaring the Defendants in violation of the Takings Clause and permitting TB Holdings to proceed with developing the Undeveloped Units as planned, issuing a restraining order against Crabtree and the Defendants for further interfering or unlawfully obstructing TB Holdings' development of the Undeveloped Units, and entering an order invalidating any provisions in the Town's Charter or Bylaws purporting to give the Town Manager excessive control and influence over the Town's municipal boards and agencies;

e.  An award to TB Holdings of any and all attorneys' fees, expert fees, costs, and other expenses incurred by TB Holdings under 42 U.S.C. § 1988;

f.  An award of punitive damages against Crabtree individually; and/or

g.  Any other relief that the Court deems fair, equitable, and just.

### **Count II**

#### *42 U.S.C. § 1983 – Procedural Due Process –*
#### *5th and 14th Amendments of the United States Constitution*

103.    TB Holdings repeats the foregoing allegations in this Complaint as if they were each expressly set forth herein.

104.    At all relevant times, TB Holdings had a protected property interest in the Property and rights to develop the Undeveloped Units, including but not limited to rights stemming from prior approvals obtained by TB Holdings for the Property since 2016.

105.       The Defendants, acting under the color of law, and/or through municipal customs or practices, deprived TB Holdings Property without constitutionally adequate process.

106.       The deprivation of TB Holdings' property interest was significant, and TB Holdings has been deprived of the value and enjoyment of the Undeveloped Property, as well as the ability to earn income therefrom and realize its investment in the Property.

107.       Defendants intentionally and with malice violated TB Holdings' due process rights by exercising authority over and restricting TB Holdings' development plans for the Undeveloped Units without exercising proper procedures or implementing government action in a fair manner.

108.    TB Holdings was not provided a full and fair hearing before the Town's Boards, as the outcome of said hearings had been predetermined by the Defendants, including Crabtree, Schomer, the Planning Board members, and Town employees.

109.       Crabtree's broad and discretionary control over the Planning Board and other municipal bodies—especially those serving in a quasi-judicial capacity—violates fundamental components of due process and TB Holdings' constitutional right to impartial decisionmakers.

110.       To the extent Crabtree's broad and discretionary control is authorized under the Home Rule Charter and Bylaws, these provisions in the Charter and Bylaws are unconstitutional and violate the Due Process Clause of the United States Constitution.

111.    Each of the Defendants, from an objective standpoint, should have known that their conduct was unlawful, and TB Holdings' constitutional right not to be deprived of their property interests without procedural due process was clearly established at the time of the violation.

112.    Crabtree's actions and statements show an animus to TB Holdings and a reckless, callous, and outrageous indifference to the federal protected rights of TB Holdings, which arises to the level of evil intent.

113.    TB Holdings has been injured as a result of the Defendants' violations of its due process rights under the United States Constitution.

114.    The Defendants conspired with Crabtree and are jointly and severally liable under 42 U.S.C. § 1985.

115.    The Defendants continue to obstruct TB Holdings' exercise of its legal rights and its ability to fully pursue the claims alleged herein through its violations of the Massachusetts Public Records Law.

**WHEREFORE**, TB Holdings respectfully requests that the Court issue judgment in its favor on Count II against the Defendants, and enter an order as follows:

a.    That the Defendants are jointly and severally liable (under § 1985) to TB Holdings for conspiring and violating its rights under § 1983 and the Fifth and Fourteenth Amendment of the United States Constitution;

b.    That Crabtree's and the Special Municipal Counsel's actions are imputed to the Town of Saugus;

c.    An award to TB Holdings of damages in an amount to make TB Holdings whole for Defendants' constitutional violations;

d.    An award of equitable or injunctive relief permitting TB Holdings to proceed with developing the Undeveloped Units as planned, issuance of a restraining order against Crabtree and the Defendants for further interfering or unlawfully obstructing TB Holdings' development of the Undeveloped Units, and entry of an order invalidating any provisions

in the Town's Charter or Bylaws purporting to give the Town Manager excessive control and influence over the Town's municipal boards and agencies;

e.  An award to TB Holdings of any and all attorneys' fees, expert fees, costs, and other expenses incurred by TB Holdings under 42 U.S.C. § 1988;

f.  An award of punitive damages against Crabtree individually; and/or

g.  Any other relief that the Court deems fair, equitable, and just.

## Count III

### 42 U.S.C. § 1983 – Substantive Due Process – 5th and 14th Amendments of the United States Constitution

116.    TB Holdings repeats the foregoing allegations in this Complaint as if they were each expressly set forth herein.

117.    For the reasons as set forth above, the Defendants' aforementioned actions and/or inactions violated TB Holdings' substantive due process rights under the United States Constitution.

118.    TB Holdings was not provided a full and fair hearing before the Town's Boards, as the outcome of said hearings had been predetermined by the Defendants, including Crabtree, Schomer, the Planning Board members, and Town employees.

119.    Defendants unlawfully deprived TB Holdings' of their right to develop the Undeveloped Units, in which they had a protected property interest, including but not limited to those obtained in prior approvals since 2016.

120.    Defendants' actions and/or inactions, especially Crabtree's, were so egregious as to shock the conscious.

121.    Defendants' abused their governmental power when they unlawfully obstructed TB Holdings' ability to develop the Undeveloped Units, and the municipal processes that Defendants subjected TB Holdings to were marred with fundamental procedural irregularities.

122.    The delay, denial, and/or obstruction of municipal approvals for the Undeveloped Units had no rational connection to any legitimate governmental interests.

123.    Defendants' actions and/or inactions, especially Crabtree's, were arbitrary, capricious, and outrageous and motivated by animosity, bias, and self-interest.

124.    Defendants' actions and/or inactions are representative of municipal customs and practices utilized by the Town resulting in the violation of constitutional rights.

125.    TB Holdings has been injured as a result of Defendants' actions and/or inactions.

126.    The Defendants continue to obstruct TB Holdings' exercise of its legal rights and its ability to fully pursue the claims alleged herein through its violations of the Massachusetts Public Records Law.

**WHEREFORE**, TB Holdings respectfully requests that the Court issue judgment in its favor on Count III against the Defendants, and enter an order as follows:

a.    That the Defendants are jointly and severally liable (under § 1985) to TB Holdings for conspiring and violating its rights under § 1983 and the Fifth and Fourteenth Amendment of the United States Constitution;

b.    That Crabtree's and the Special Municipal Counsel's actions are imputed to the Town of Saugus;

c.    An award to TB Holdings of damages in an amount to make TB Holdings whole for Defendants' constitutional violations;

d.    An award of equitable or injunctive relief permitting TB Holdings to proceed with developing the Undeveloped Units as planned, issuance of a restraining order against Crabtree and the Defendants for further interfering or unlawfully obstructing TB Holdings' development of the Undeveloped Units, and entry of an order invalidating any provisions

in the Town's Charter or Bylaws purporting to give the Town Manager excessive control

and influence over the Town's municipal boards and agencies;

e.   An award to TB Holdings of any and all attorneys' fees, expert fees, costs, and other

expenses incurred by TB Holdings under 42 U.S.C. § 1988;

f.   An award of punitive damages against Crabtree individually; and/or

g.   Any other relief that the Court deems fair, equitable, and just.

## Count IV

### 42 U.S.C. § 1983 – Equal Protection Clause –
### 5th and 14th Amendments of the United States Constitution

127.        TB Holdings repeats the foregoing allegations in this Complaint as if they were

each expressly set forth herein.

128.    Based on the foregoing reasons, TB Holdings brings a claim as a "class of one" for

violations of the Equal Protection Clause by the Defendants.

129.    Through the unlawful $200,000 Payment and unequal treatment by the Defendants in

obtaining municipal approvals, Defendants have treated TB Holdings dissimilarly and arbitrarily

in comparison with similarly situated property owners.

130.    For example, Caruso and Avalon, who own nearby property, gained approval for

constructing their projects during the time when this project was delayed and obstructed by the

Defendants, and the Defendants enacted two new zoning amendments, which drastically reduced

the allowed height and allowed density of TB Holdings' individual project, thereby substantially

reducing the value of the project and the land owned by TB Holdings on which it intended to

build an assisted living facility.

131.    The Defendants conspired to violate the constitutional rights of TB Holdings and are jointly

and severally liable under 42 U.S.C. § 1985.

132.    The Defendants' actions and/or inactions are representative of municipal customs and practices utilized by the Town resulting in the violation of constitutional rights.

133.    The Defendants are also liable for TB Holdings' attorney's fees costs incurred to vindicate its constitutional rights under 42 U.S.C. § 1988.

134.    The Defendants continue to obstruct TB Holdings' exercise of its legal rights and its ability to fully pursue the claims alleged herein through its violations of the Massachusetts Public Records Law.

**WHEREFORE**, TB Holdings respectfully requests that the Court issue judgment in its favor on Count IV against the Defendants, and enter an order as follows:

a.    That the Defendants are jointly and severally liable (under § 1985) to TB Holdings for conspiring and violating its rights under § 1983 and the Fifth and Fourteenth Amendment of the United States Constitution;

b.    That Crabtree's and the Special Municipal Counsel's actions are imputed to the Town of Saugus;

c.    An award to TB Holdings of damages in an amount to make TB Holdings whole for Defendants' constitutional violations;

d.    An award of equitable or injunctive relief declaring the Defendants in violation of the Takings Clause and permitting TB Holdings to proceed with developing the Undeveloped Units as planned, issuing a restraining order against Crabtree and the Defendants for further interfering or unlawfully obstructing TB Holdings' development of the Undeveloped Units, and entering an order invalidating any provisions in the Town's Charter or Bylaws purporting to give the Town Manager excessive control and influence over the Town's municipal boards and agencies;

e.   An award to TB Holdings of any and all attorneys' fees, expert fees, costs, and other expenses incurred by TB Holdings under 42 U.S.C. § 1988;

f.   An award of punitive damages against Crabtree individually; and/or

g.   Any other relief that the Court deems fair, equitable, and just.

## Count V

### Violation of the Fair Housing Act – 42 U.S.C. §§ 3604, 3613, and 3617

135.      TB Holdings repeats the foregoing allegations in this Complaint as if they were each expressly set forth herein.

136.      The Fair Housing Act ("FHA") prohibits the Defendants from taking action which results in a disparate impact on members of an FHA-protected class, or for failing to make a reasonable accommodation for members of an FHA-protected class.

137.      Through its plans, contracts, aid, and/or efforts to develop and construct an assisted living facility on Unit 4 and Unit 5 with Wingate Living, a member of an FHA-protected class as a provider of housing for handicapped individuals, and/or based upon TB Holdings' planned aid and assistance to Wingate Living in its provision of housing services to members of an FHA-protected class (*i.e.*, handicapped individuals), TB Holdings is aggrieved and possesses the requisite standing to bring a claim against the Defendants under the FHA under theories of disparate impact and failure to make reasonable accommodations for members of a protected class.

138.      TB Holdings exercised or attempted to aid members of an FHA-protected class in exercising rights protected under the FHA by providing the location of the proposed facility and attempting to advance the development of Units 4 and 5 for the benefit of Wingate.

139.     The Defendants' conduct, especially Crabtree's on behalf of the Town (which is subject to the FHA), constituted coercion, intimidation, threat, or interference in connection with TB Holdings having exercised, aided, or encouraged others in exercising a right protected by the FHA, and TB Holdings has sustained damages as a result.

**WHEREFORE,** based upon the foregoing allegations, TB Holdings respectfully request that the Court issue judgment in its favor on Count V and award TB Holdings appropriate relief under 42 U.S.C. § 3613 of the Fair Housing Act, including but not limited to an award of damages, attorney's fees, costs, interests, and equitable and injunctive relief to remedy the violation.

## Count VI

### *Declaratory Judgment Act – 28 U.S.C. § 2201 and 28 U.S.C. § 2202*

140.     TB Holdings repeats the foregoing allegations in this Complaint as if they were each expressly set forth herein.

141.   The Federal Declaratory Judgment Act allows the Court to declare the rights and other legal relations of TB Holdings and Defendants in a case of actual controversy.

142.   This is a case of actual controversy.

**WHEREFORE,** based upon the foregoing allegations, TB Holdings respectfully request that the Court issue judgment in its favor on Count VI and enter a declaratory judgment that Defendants have violated the federal constitutional rights of TB Holdings, with such relief permitting TB Holdings to proceed with developing the Undeveloped Units as planned, a restraining order against Crabtree and the Defendants for further interfering or unlawfully obstructing TB Holdings' development of the Undeveloped Units, and an order invalidating any provisions in the Town's Charter or Bylaws purporting to give the Town Manager excessive control and influence over the Town's municipal boards and agencies.

## Count VII

### *Violation of Massachusetts Public Records Law*

143.        TB Holdings repeats the foregoing allegations in this Complaint as if they were each expressly set forth herein.

144.        As explained above, the Defendants violated the Massachusetts Public Records Law as set forth in M.G.L. c. 66, § 10, giving rise to a private cause of action to TB Holdings under M.G.L. c. 66, § 10A for appropriate relief.

**WHEREFORE,** based upon the foregoing allegations, TB Holdings respectfully request that the Court issue judgment in its favor on Count VII and enter an order requiring the Defendants to produce all of the documents requested in the Public Records Request at no cost to TB Holdings pursuant to M.G.L. c. 66, § 10 and M.G.L. c. 66, § 10A, with an award of statutory attorney's fees to TB Holdings and all litigation costs, and imposition of a $5,000.00 fine against the Defendants in accordance with M.G.L. c. 66, § 10A.

*Respectfully submitted*,

**TB HOLDINGS, LLC**

*By their attorneys,*

/s/ *Michael A. Kelly*
Michael A. Kelly, Esq. (#266820)
Michael D. Resnick, Esq. (#688853)
Gregory S. Estabrooks, Esq. (#710948)
**KSPR LAW, P.C.**
128 Dorrance Street, Suite 300
Providence, RI 02903
Tel. (401) 490-7334
Fax: (401) 490-7874
mkelly@ksprlaw.com
mresnick@ksprlaw.com
gestabrooks@ksprlaw.com

Dated: August 21, 2025

## VERIFICATION

I, Michael Barsamian, hereby state that I have read the within Complaint. The Complaint was prepared by or with the assistance of agents, representatives and/or attorneys and/or others believed to have relevant information, and with the assistance and advice of counsel upon which I have relied. The Complaint set forth herein, subject to inadvertent or undiscovered errors or omissions, are based on and therefore necessarily limited by the records still in existence, presently recollected, thus far discovered in the course of preparation of this Complaint, and currently available. Consequently, I reserve the right to make any changes in, or additions to, this Complaint if it appears at any time that errors or omissions have been made therein or that more accurate or complete information has become available. Subject to the limitations set forth herein, said Complaint are true and correct to the best of our present knowledge, information and belief.

Subscribed and sworn to, under oath, on this ___ day of _August_____, 2025.

MICHAEL BARSAMIAN
TB HOLDINGS, LLC

State of __MA_____
County of _Essex_____

On this ___ day of _August__ 2025, before me, the undersigned notary public, personally appeared _____ personally known to the notary (or proved to the notary through satisfactory evidence of identification, which was _driver license___ ), to be the person who signed the preceding or attached document in my presence, and who swore or affirmed to the notary that the contents of the document are truthful and accurate to the best of his/her knowledge and belief.

Notary Public
My Commission Expires:

MICHELLE M. CRAFTS
Notary Public, Commonwealth of Massachusetts
My Commission Expires August 9, 2030

27