**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | | |
|---|---|---|
| TB HOLDINGS, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>TOWN OF SAUGUS;<br>SCOTT CRABTREE, *in his Official Capacity as Town Manager and Individually*;<br>and JOHN DOES 1-10, *as Unnamed Town Officials*,<br>*Defendants*. | ) | Case No. 1:25-CV-12330-JEK |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO**
**<u>COMPEL PRODUCTION OF DOCUMENTS</u>**

Defendants Town of Saugus (the "Town") and Scott Crabtree (together, "Defendants") oppose the Motion to Compel Production of Documents (Dkt. No. 47)("Plaintiff's Motion") filed by Plaintiff TB Holdings, LLC ("TB Holdings" or "Plaintiff"). The Court should deny the motion. Defendants have met every deadline in responding to TB Holdings' discovery. As TB Holdings acknowledges, the parties negotiated search terms and custodians in good faith and agreed to the search protocol only about five weeks before TB Holdings filed this motion. Defendants have begun producing documents on a rolling basis. The time needed to complete the production comes from the breadth of TB Holdings' requests: twenty-seven requests reaching back to 2014 and requiring a search against several Town departments, boards, and commissions. It also comes from TB Holdings' insistence on a far larger set of search terms than Defendants proposed or than are arguably relevant to this action.

Finally, TB Holdings filed this motion without the conference Local Rule 37.1 requires. It never asked to confer about the complete search-term production it now seeks to compel, and it never followed up on its narrower earlier request before filing. Defendants have, prior to serving this opposition, served the documents responsive to those requests TB Holdings identified in connection with its only request for a discovery conference. And Defendants anticipate producing documents responsive to the other requests in short order. This Court should decline TB Holdings' request that it involve itself in the early stages of discovery disputes.

Pursuant to Local Rule 7.1(b)(2), Defendants submit a declaration alongside this opposition in support of the facts set forth herein. Further, because Defendants' motion for an extension of time to respond to Plaintiff's Motion remains pending before the Court, Defendants file this opposition without waiver and expressly reserve their right to submit a more fulsome response should the Court grant that motion.

## FACTUAL BACKGROUND

Though the Court will be familiar with many of this case's facts from the parties' recent filings and TB Holdings' Motion to Compel, Defendants offer the following background to help contextualize both the scope and history around these requests.

### I. TB Holdings' Requests Reach Back More Than A Decade And Span Numerous Town Departments, Boards, And Commissions

TB Holdings is the developer of the Essex Landing Project, a mixed-use development at Broadway and Collins Avenue in Saugus. The Town's dealings with the developer about the property go back to 2014 and have run through numerous Town departments, boards, and commissions over more than a decade. Those Boards and Commissions include, but are not limited to, the Planning Board, Zoning Board of Appeals, Conservation Commission, Board of Selectmen, Inspectional Services Department, and the Town Manager's office.

On July 30, 2026, TB Holdings served its First Request for Production of Documents, which has twenty requests. Plaintiff's Motion at Ex. 1.[1] On August 4, 2026, it served a Second Request for Production with seven more. *Id.*, Plaintiff's Ex. 2. Many of the requests are broad by any measure, including requests for:

- all communications with any third-party developer about payments or donations "from 2015 to present" (First Req. No. 4);
- all communications about any zoning amendment "affecting the Essex Landing Project from 2015 to present" (First Req. No. 7);
- all correspondence, including text messages, between the Town Manager and "any member of any Town board or Town department" relating to TB Holdings and/or the Essex Landing Project (First Req. No. 15; Second Req. No. 4); and
- all meeting minutes and all approvals or decisions from "any Town of Saugus board, committee, or department" relating to TB Holdings and its projects, with no date limit (Second Req. Nos. 1, 3).

The requests define "You" to cover all of the Town's "past, present, and future employees, officers, directors, . . . representatives, assigns, attorneys, and agents." Plaintiff's Ex. 1, Definition G.

## II. Defendants Timely Responded To Every Request And Promptly Proposed Search Terms

Defendants served written responses and objections to both requests on August 31, 2026. *See* Plaintiff's Exs. 3, 4. That was within the thirty days allowed by Fed. R. Civ. P. 34(b)(2)(A) and L.R. 34.1. TB Holdings does not argue otherwise. Defendants agreed to conduct a reasonable search and produce non-privileged responsive documents for most requests. For many requests, they stated that a reasonable search required agreed search terms, custodians, and date ranges, or else narrowing. *See, e.g.*, Plaintiff's Ex. 3, Resp. Nos. 5, 7, 13, 15; Plaintiff's Ex. 4, Resp. Nos. 1, 3, 4, 5. For other requests, Defendants stated that they had no responsive

[1] Exhibits to Plaintiff's Motion hereafter cited as "Plaintiff's Ex."

documents (Plaintiff's Ex. 3, Resp. Nos. 11, 16, 17, 18; Ex. 4, Resp. Nos. 2, 6) or that the request was premature (Ex. 3, Resp. No. 19).

Defendants did not then wait to start the process of identifying search terms. With their written responses on August 31, 2026, defense counsel proposed targeted search terms keyed to the property and the Plaintiff: "TB Holdings," "Essex Landing," and the project addresses. Plaintiff's Ex. 5.

## III. **TB Holdings Insisted On Additional Search Terms**

TB Holdings rejected that approach. On September 10, 2026, it sent back a multi-page list. The list included the full names, last-name-only variants, and alternate spellings of more than sixty individuals, including members of the Planning Board, Conservation Commission, Zoning Board of Appeals, and Board of Selectmen, Town staff, attorneys, engineers, and architects. It also included a dozen or more addresses and a set of third-party entities. Plaintiff's Ex. 6. TB Holdings asked that these terms be run across both sets of requests, against the files of custodians it did not identify, including "personal e-mail accounts and text-messaging devices," for the period "2015 to present." *Id.* at 3. Several of the proposed terms are common last names, such as "Long," "Riley," "Cannon," and "Stack." Run without limits, terms like these would capture large numbers of documents unrelated to this case.

Six days later, TB Holdings asked when it could "expect to receive the documents." Plaintiff's Ex. 7. On September 18, 2026, defense counsel explained that the proposed terms appeared overly broad and that Defendants were working with the Town to propose terms more likely to return responsive material. *Id.* Defendants sent a revised proposal of search terms, custodians, and date ranges on September 28, 2026. Plaintiff's Ex. 8.

## IV. The Parties Agreed On A Search Protocol Only Five Weeks Before TB Holdings Moved To Compel

On October 6, 2026, TB Holdings accepted Defendants' proposed search terms, custodians, and date ranges. It also reserved the right to seek more terms, custodians, and date ranges later. Plaintiff's Ex. 9. In the same letter, TB Holdings named a subset of requests that, in its view, did not require search terms: First Request Nos. 1, 3, 7, 9, 16, and 20, and Second Request No. 3. It asked for a discovery conference by October 21, 2026, but only "[t]o the extent that the Town will not agree to produce documents responsive to" those specific requests. *Id.* at 2. Defendants agreed to produce responsive documents where they existed to all but First Request No. 7, which they had identified *inter alia* as overly broad, unduly burdensome, and disproportionate to the needs of the case. TB Holdings subsequently served a third request for production of documents that narrowed that request. Letter explaining third request attached as **Exhibit A.**

On October 8, 2026, defense counsel responded about each of the above-identified requests. Defense counsel confirmed that the Town was gathering documents responsive to First Request Nos. 1, 3, 9, and 20. Defense counsel explained that the Town's position on First Request No. 7 (narrowing required) and No. 16 (no responsive documents) was stated in its written responses, and that documents responsive to TB Holdings' Second Request No. 3 would be identified after application of the agreed search terms. Defense counsel also said they were checking availability for a conference. Plaintiff's Ex. 10. The next day, TB Holdings asked when production would occur and said it would "await [Defendants'] availability for a discovery conference." *Id.*

Defense counsel did not follow up with proposed dates, and Defendants regret that oversight. TB Holdings, for its part, did not follow up either. For more than a month, from

October 9 to November 11, 2026, TB Holdings sent no further correspondence, requested no conference about the agreed search-term production, and gave no notice that it intended to move to compel all documents under all twenty-seven requests. It then filed this motion.

## V. Defendants Are Collecting, Reviewing And Producing Documents

Since the search protocol was agreed on October 6, 2026, Defendants have initiated a search around the agreed terms and across the agreed custodians and repositories, and are in the midst of collecting the results and reviewing them for responsiveness and privilege. That work requires coordinating with several Town departments and with current and former members of multiple boards and commissions, whose records are kept in different places and formats.

Defendants have always anticipated and explained that they will be producing documents on a rolling basis, and they have begun doing so. On November 23, 2026, Defendants made their first production. That production included the documents responsive to TB Holdings' First Request Nos. 1 and 9, Bates stamped TOS 000001-000077. Separately, Defendants made known that they have not identified documents responsive to First Request No. 3 and do not intend to produce documents in response to First Request No. 20, which sought "All documents and communications concerning or supporting the damages claimed by the Defendants in the above-captioned litigation." Request No. 20 -- and the Defendants' response – arose when the Defendants' counterclaims were still pending. With this Court's decision on the Plaintiff's anti-SLAPP motion and dismissal of the Defendants' counterclaims, there are no longer damages claimed by the defendants and by extension no responsive documents to that request.

## VI. The Governing Rules Require Good-Faith Conferral And Proportional Discovery

A party may move to compel when another party "fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule

34." Fed. R. Civ. P. 37(a)(3)(B)(iv). The motion "must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action." Fed. R. Civ. P. 37(a)(1).

This Court's Local Rules add to that requirement. Under Local Rule 37.1, "[b]efore filing any discovery motion . . . counsel for each of the parties shall confer in good faith to narrow the areas of disagreement to the greatest possible extent. It shall be the responsibility of counsel for the moving party to arrange for the conference." *Syrjala v. Total Healthcare Solutions, Inc.*, 186 F.R.D. 251, 252 (D. Mass. 1999) (quoting L.R. 37.1(A) and sanctioning the defendants for prematurely bringing a motion and certifying under L.R. 37.1(B)). A motion may be filed only if opposing counsel failed to respond to a conference request within seven days, failed to attend a conference within fourteen days of the request, or the disputed issues were not resolved at the conference. *Id.* (quoting L.R. 37.1(B)). Local Rule 7.1(a)(2) separately provides that "[n]o motion shall be filed unless counsel certify that they have conferred and have attempted in good faith to resolve or narrow the issue."

Discovery must also be "proportional to the needs of the case," considering, among other factors, "whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1). The Supreme Court has long instructed that the relevance requirement of Rule 26(b)(1) "should be firmly applied," and that district courts "should not hesitate to exercise appropriate control over the discovery process" to protect a party from "undue burden or expense." *Herbert v. Lando*, 441 U.S. 153, 177 (1979). The First Circuit likewise recognizes that "[d]istrict courts exercise broad discretion to manage discovery matters." *Heidelberg Ams., Inc. v. Tokyo Kikai Seisakusho, Ltd.*, 333 F.3d 38, 41 (1st Cir. 2003). Within that framework, the party moving to compel "bears the initial burden of showing the relevance of the information

sought." *DMO Norwood LLC v. Kia Am., Inc.*, 691 F. Supp. 3d 252, 257 (D. Mass. 2023) (quoting *Douglas v. EF Educ. First Int'l, Ltd.*, 344 F.R.D. 135, 137 (D. Mass. 2023)).

## VII. Defendants Have Not Refused To Produce Anything – The Motion Faults Them For Not Producing Search-Term Results Before The Search Terms Existed

This is not a case in which a party ignored discovery or served late responses. *Compare Merchia v. Kautter*, 336 F.R.D. 396 (D. Mass. 2020) (responses served after the thirty-day period under Rule 34(b)(2)(A); objections waived under L.R. 34.1(c)(1)). Defendants served complete written responses and objections to all twenty-seven requests on August 31, 2026, the day they were due. They proposed search terms the same day. When TB Holdings answered with a far broader list, Defendants responded within about a week and sent a revised protocol ten days after that. TB Holdings accepted the protocol on October 6, 2026. The record shows steady, good-faith engagement, not the "obstruct[ion]" TB Holdings alleges. Pl.'s Mem. at 2.

TB Holdings' main complaint is that Defendants had not produced documents by November 11, 2026. But the search protocol that governs most of the requested production was not agreed until October 6, 2026, five weeks before the motion was filed. Until then, the parties disagreed about how the search should be run, and TB Holdings itself pressed for a much larger search. TB Holdings cannot fault Defendants for not producing search-term results before the search terms existed. Nor can TB Holdings unilaterally determine five weeks to be sufficient time for the collection and review of documents under the newly agreed, multi-custodian protocol. Had TB Holdings conferenced this motion, including its contention that Defendants' lack of production to that point constituted a refusal to produce documents, the parties might have substantially narrowed the issues and come up with an agreed upon timeline or set of deadlines for production. Instead, TB Holdings seeks to enlist the Court and forgo such conversations.

## VIII. Any Delay Stems From The Breadth Of TB Holdings' Own Requests And Search Terms, And Defendants' Rolling Production Is Reasonable

Rule 34 allows production within "another reasonable time specified in the response." Fed. R. Civ. P. 34(b)(2)(B). What is reasonable depends on the scope of what was requested, and the Court has "broad discretion to manage discovery matters," including the timing of a large production. *Heidelberg Ams.*, 333 F.3d at 41. Courts in this District recognize that the size of a document production bears on whether delay is excusable, and that the requesting party's own conduct is part of that assessment. In *In re DOJ Subpoenas to ABC*, the court treated "[t]he magnitude of the document production" as a mitigating factor. 263 F.R.D. 66, 72 (D. Mass. 2009)(declining to find waiver in the late production of privilege logs and denying the related motion to compel). It also looked to "[t]he full course of dealing," noting that the requesting party "was lethargic in responding" and could not "now proclaim 'gotcha'" after a lengthy rolling production. *Id.*

The course of dealing here is similar. TB Holdings asked for more than a decade of records from a municipality: communications of the Town Manager with "any member of any Town board or Town department," minutes and decisions of "any" board, committee, or department, and communications with third-party developers since 2015. Searching those records means collecting from multiple departments and from current and former members of the Planning Board, Zoning Board of Appeals, Conservation Commission, and Board of Selectmen, among others. TB Holdings made the task harder by insisting on more than sixty name terms with variants and misspellings, plus addresses and entities, across unidentified custodians and personal devices. Plaintiff's Ex. 6. Defendants spent much of September reducing that list to a workable protocol, and TB Holdings ultimately accepted it. TB Holdings has also reserved the right to demand more terms and custodians later. Plaintiff's Ex. 9.

Defendants have done what Rule 34 contemplates. They agreed to produce, worked out a search protocol with opposing counsel, began their search, and began producing documents on a rolling basis on November 23, 2026. They will continue doing so as the review proceeds and intend to make a substantive production on or before December 7, 2026. Where a responding party is already performing agreed searches and producing the results, courts in this District have denied motions to compel as moot. *See Ferring Pharms. Inc. v. Braintree Labs., Inc.*, 168 F. Supp. 3d 355, 364 (D. Mass. 2016) (denying motion to supplement records as moot in light of party's representation that it "has already performed those keyword searches" and that it was "in the process of producing the responsive documents from those searches"). The same result is appropriate here. At most, the Court should set a reasonable schedule for completing the rolling production. It should not adopt TB Holdings' proposed fourteen-day deadline for "all documents," which is untethered to the size of the search TB Holdings itself demanded.

TB Holdings relies on *Sobol v. Imprimis Pharmaceuticals*, an unpublished, out-of-circuit decision, for the proposition that a party violates Rule 34 by agreeing to produce "with no reasonable deadline in sight." No. CV 16-143339, 2017 U.S. Dist. LEXIS 184478 (E.D. Mich. Oct. 26, 2017) (granting a motion to compel documents responsive to *two* requests after the parties had met and conferred about the same,  producing counsel indicated an intent to produce only a "sample" of the requested discovery, and producing party argued for the first time at the hearing that the responsive documents were not in its possession, custody, or control.) The *Sobel* Court allowed the producing party more than a month to make its production. *Id.* at 18, That is not this case. Perhaps most significantly, the parties have not met and conferred, nor narrowed their issues, as the parties did in *Sobol*. Defendants have been forthcoming in what repositories they intend to search and where they already have determined there exist no documents. Nor has

TB Holdings shown that Defendants have made, and are making, no attempt to timely produce documents. A production has begun, and the remaining review is proceeding under a protocol TB Holdings accepted only weeks before filing.

## IX. TB Holdings Never Sought To Confer On The Relief It Now Seeks, As Local Rule 37.1 Requires

Local Rule 37.1 makes it "the responsibility of counsel for the moving party to arrange for the conference," and its purpose is to narrow disagreements "to the greatest possible extent" before a motion is filed. *Syrjala*, 186 F.R.D. at 252 (quoting L.R. 37.1(A)). One purpose of the conference requirement "is to avoid premature motions." *Hasbro, Inc. v. Serafino*, 168 F.R.D. 99, 101 (D. Mass. 1996). In *Hasbro*, the court found a motion to compel deficient where "counsel had been conferring about the document request and had not yet reached an impasse in the discussions before the motion was filed." *Id.* The court added that the movant's private belief that the matter was at an impasse, "which is not evident on the record, does not excuse the failure" to comply. *Id.* The Local Rule 7.1 certification is likewise "not an empty exercise": it "fosters discussion between parties about matters before they come before the court, and it preserves scarce judicial resources." *Martinez v. Hubbard*, 172 F. Supp. 3d 378, 385 (D. Mass. 2016). The *Martinez* Court indicated that Martinez's counsel's failure to indicate that it intended to move for sanctions during the parties' 7.1 conference would be sufficient reason to deny the motion and was sufficient to warrant its own sanction. *Id*. at 383.

Contrary to what TB Holdings sets forth in its Motion at 3, TB Holdings' only conference request was conditional and limited. Its October 6, 2026 letter sought a conference only "[t]o the extent that the Town will not agree to produce documents" responsive to seven specific requests that, in TB Holdings' view, did not require search terms. Plaintiff's Ex. 9 at 2. Defendants responded within two days on each of those seven requests. They confirmed that documents

responsive to four of them were being gathered, and they restated their positions on the other three. Plaintiff's Ex. 10. TB Holdings never asked to confer about the timing of the search-term production, which it had accepted the same day. That production is the main subject of this motion. TB Holdings' memorandum asks the Court to compel "all documents resulting from the agreed-upon search terms." Pl.'s Mem. at 6. No conference about that relief was ever requested, so no conference about it could have failed to occur.

Nor did TB Holdings try to confer after October 9, 2026. It sent no follow-up, requested no call, and did not warn that it intended to seek an order compelling production on all twenty-seven requests. To the contrary, when Defendants sought an extension, Plaintiff denied the request and declined Defendants' offer to confer on a motion for an extension. On this record, the parties had not reached an impasse on the relief sought, and the motion is premature in the way *Hasbro* describes. A conference would likely have resolved or substantially narrowed the dispute. Defendants would have explained the status of the review, discussed a rolling-production schedule, and confirmed that production was about to begin.

Defendants acknowledge that their counsel said they would provide dates for a conference related to seven specified requests and did not do so.[2] Defendants regret that lapse, but it does not warrant the relief TB Holdings seeks. Courts in this District have automatically allowed a motion to compel where opposing counsel "did not respond" to repeated conference requests and made "no attempt . . . to explain or justify the failure to respond." *Cohen v. City of Newton*, 248 F.R.D. 92, 92 (D. Mass. 2008). This case is different in each of those respects. Defendants <u>did</u> respond, substantively and within two days, to the only conference request TB

[2] After counsel for the Defendants reminded TB Holdings of certain answers to the initial requests, only four of the seven requests remained at issue. Of those four, Defendants found no documents responsive to one, and another concerned Defendants' counterclaims and is now moot. TB Holdings effectively sought a conference in connection with two of its requests; Defendants have since produced documents responsive to those requests.

Holdings made, and they addressed each request it identified. The conference request covered only seven requests, not the search-term production at the center of this motion. And Defendants explain the circumstances here rather than ignoring them. Read fairly, TB Holdings' October 6 request does not support a Local Rule 37.1 certification for a motion to compel all documents under all twenty-seven requests.

## X. An Award Of Expenses Is Not Warranted

TB Holdings' motion does not request fees, but its memorandum cites Rule 37(a)(5)(A). Pl.'s Mem. at 5. Even if a motion to compel is granted, the Court "must not order this payment if: (i) the movant filed the motion before attempting in good faith to obtain the disclosure or discovery without court action; (ii) the opposing party's nondisclosure, response, or objection was substantially justified; or (iii) other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(a)(5)(A). Each exception applies. TB Holdings never sought to confer about the search-term production before filing. Defendants' timing was substantially justified by the breadth of the requests and by a search protocol agreed only weeks earlier. And an award would be unjust where production has begun. Defendants reserve their right to seek expenses under Rule 37(a)(5)(B) if the motion is denied.

## CONCLUSION

Based on the above, Defendants respectfully request that this Court deny Plaintiff's Motion to Compel, or, in the alternative, enter a reasonable schedule for completing Defendants' rolling production no sooner than a month after the Court's decision in the matter and deny any award of expenses.

Respectfully submitted,

**TOWN OF SAUGUS; SCOTT CRABTREE,** ***in his Official Capacity as Town Manager and Individually*****; and JOHN DOES 1-10,** ***as Unnamed Town Officials,***

By their attorneys,

*/s/ Shayne Kinsella*
Raymond P. Ausrotas (BBO #640315)
rausrotas@arrowoodllp.com
Shayne Kinsella (BBO# 713287)
skinsella@arrowoodllp.com
**ARROWOOD LLP**
One Bowdoin Square, Suite 300
Boston, MA 02114
Tel. (617) 849-6200 / Fax: (617) 849-6201

Dated: November 25, 2026

## CERTIFICATE OF SERVICE

By signing below, I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

*/s/ Shayne Kinsella*
Shayne Kinsella (BBO# 713287)

# EXHIBIT A

KELLY, SOUZA, PARMENTER & RESNICK, P.C.
think TENACIOUS

***Michael A. Kelly, Esq.***
***mkelly@ksprlaw.com***

November 16, 2026

**VIA ELECTRONIC MAIL ONLY**

Raymond P. Ausrotas, Esq.
Shayne Kinsella, Esq.
Alexa Platt, Esq.
ARROWOOD LLP
One Bowdoin Square, Suite 300
Boston, MA 02114
rausrotas@arrowoodllp.com
skinsella@arrowoodllp.com
aplatt@arrowoodllp.com

**RE: *TB Holdings, LLC v. Town of Saugus et al.*, Case No. 1:25-cv-12330**
**Rule 37 Good Faith Letter**

Dear Attorney Ausrotas:

We write regarding the Defendants' collection, search, and production of documents and electronically stored information ("ESI") in response to Plaintiff TB Holdings, LLC's First Request for Production of Documents (served July 30, 2026) and Second Request for Production of Documents (served August 4, 2026).

As you know, on or about August 31, 2026, the Defendants objected to Request Nos. 5, 7, and 13 of TB Holdings' First Request for Production as overbroad and refused to provide responsive documents absent narrowing by TB Holdings. For the sake of clarity, Request Nos. 5, 7, and 13 (and the Defendants' responses thereto) are excerpted in full below.

- **Request No. 5:** All documents and communications concerning the development, approval, permitting, or conditions for Units 4, 5, and 6 of the Essex Landing Project.
    - **Town's Response to Request No. 5:** Defendants object to the extent this request seeks documents that are matters of public record and are therefore equally available to Plaintiff. Defendants further object to this request to the extent it seeks documents protected by the attorney-client privilege and/or the work product doctrine. Defendants further object to this request as overly broad, unduly burdensome, to the extent it seeks documents not relevant to Plaintiff's claims and defenses, and where it is disproportionate to the needs of the case, particularly where it requires an exhaustive search of records maintained by several departments likely to turn up many records already in TB Holdings' possession and unrelated to the claims here. ***Absent narrowing,***

***Defendants are unable to complete a comprehensive search in connection with this request.***

- **Request No. 7:** All documents and communications concerning any amendments to the Town's zoning code or bylaws affecting the Essex Landing Project from 2015 to present.
  - **Town's Response to Request No. 7:** Defendants object to this request to the extent it seeks documents protected by the attorney-client privilege and/or the work product doctrine. Defendants object to the extent this Request seeks documents that are matters of public record equally available to Plaintiff. Defendants further object to this request as overly broad, unduly burdensome, to the extent it seeks documents not relevant to Plaintiff's claims and defenses, and where it is disproportionate to the needs of the case insofar as it seeks "all . . . communications" without identifying the custodians and/or individuals whose files are to be searched, which would require Defendants to search records of an indeterminate number of custodians. Moreover, zoning amendments are of general applicability, so the phrase "affecting the Essex Landing Project" reaches documents concerning amendments that bear only incidentally on the Project, or that affect it only in way unrelated to any of Plaintiff's claims. ***Absent narrowing, Defendants are unable to complete a comprehensive search in connection with this request***.
- **Request No. 13:** All documents and communications concerning any complaints, investigations, or findings regarding the Defendants' conduct in connection with the Essex Landing Project.
  - Defendants object to this request to the extent it seeks documents protected by the attorney-client privilege and/or the work product doctrine. Defendants further object that this request is vague, overly broad and unduly burdensome, to the extent it seeks documents not relevant to Plaintiff's claims and defenses, and where it is disproportionate to the needs of the case. The "Essex Landing Project" spans more than a decade of dealings across numerous Town boards, commissions, and departments, such that this request implicates nearly every Town official and fails to identify the type of complaint, investigation, or finding sought, what was issued, or who issued it. ***Defendants cannot reasonably locate responsive documents unless Plaintiff narrows this request to a specific board or department and a specific type and source of finding.***

We maintain that Request Nos. 5, 7 and 13 are narrowly tailored to the needs of this case and, therefore, the Defendants' objections regarding their breadth are not well taken. That said, in a good-faith effort to narrow the issues between the parties in accordance with Fed. R. Civ. P. 37 and L.R. 37.1, TB Holdings revises Request Nos. 5, 7, and 13 as follows:

- **Revised Request No. 5:** For the period January 1, 2015 through present, all of the following records concerning Units 4, 5, and 6 of the Essex Landing Project:
  a) The final applications and supporting submittals for site plan, zoning, or special permit approval, including any amendments.
  b) Final approvals, denials, resolutions, and decision letters issued by Planning Department, Building Department, Planning Board, Zoning Board of Appeals, Conservation Commission, and/or Board of Selectmen;
  c) Building, grading, stormwater, and environmental permits issued, and any variances or waivers granted.

d) Written correspondence between Planning Department, Building Department, Planning Board, Zoning Board of Appeals, Conservation Commission, and/or Board of Selectmen; and TB Holdings regarding the conditions of approval or compliance with them.
e) Notices of violation, stop-work orders, and compliance or inspection reports issued by the Building Department.

- **Revised Request No. 7:** From the period of January 1, 2015 through the present, all documents and communications in the care, custody, or control of the Planning Department, Building Department, Planning Board, Zoning Board of Appeals, Conservation Commission, Board of Selectmen, and/or Town Manager concerning any proposed, drafted, enacted, or rejected amendment to the Town's zoning code or bylaws that specifically references: (a) Essex Landing Project; (b) 22, 26, 30, 40, 44, and 15 Collins Avenue; (c) 1565-1575 Broadway; d) or the zoning district(s) in which the Essex Landing Project is located. This request includes drafts, redlines, staff memoranda, meeting agendas and minutes, public hearing notices and transcripts, correspondence with TB Holdings or its representatives, and internal communications among Town officials discussing the amendment's effect on the Essex Landing Project. It excludes general zoning amendments of town-wide applicability that do not specifically address the Project or its parcels.[1]

- **Revised Request No. 13:** For the period of January 1, 2015 through the present, all written complaints concerning the Essex Landing Project, and the investigation reports, findings, or determinations issued in response, in the care, custody, or control of the Planning Department, Building Department, Planning Board, Zoning Board of Appeals, Conservation Commission, Board of Selectmen, and/or Town Manager.

* * *

Enclosed please find TB Holdings' Third Request for Production of Documents with revised Request Nos. 3, 7, and 15 as set forth above. As a result of TB Holdings' narrowing, we trust that the Defendants will produce all documents in their care, custody, or control that are responsive TB Holdings' Third Request for Production within a reasonable time but in any event no later than 30 days from the date of this correspondence, *i.e.*, **by no later than Wednesday, December 16, 2026**.

Please be advised that if we do not receive documents that are responsive to TB Holdings' Third Request for Production by the above deadline, TB Holdings will file another motion to compel with the Court.

Sincerely,

Michael A Kelly

MAK/spk

[1] These documents were previously requested via TB Holdings' open records request under M.G. L. c. 66, § 10 and the Town refused to produce them. They are not publicly available on the Town's website.

Encl. TB Holdings' Third Request for Production of Documents

cc: Michael D. Resnick, Esq. (via e-mail only)
Sean P. Klammer, Esq. (via e-mail only)